NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

RYAN MATTHEW TRITSCHLER,     )
                             )
          Appellant,         )
                             )
v.                           )      Case No. 2D18-761
                             )
HOLLY MARIE TRITSCHLER,       )
                             )
          Appellee.          )
_____)

Opinion filed June 7, 2019.

Appeal from the Circuit Court for Polk
County; John Radabaugh, Judge.

Casey C. Harrison and Andra T. Dreyfus of
Dreyfus Harrison, P.A., Clearwater, for
Appellant.

Jean Marie Henne of Jean M. Henne, P.A.,
Winter Haven, for Appellee.

VILLANTI, Judge.

          Ryan Matthew Tritschler (the Husband) appeals the final judgment of

dissolution of his marriage to Holly Marie Tritschler (the Wife), raising issues with

multiple aspects of that judgment.  Because numerous errors underlie the equitable

distribution scheme, the award of alimony, and the award of child support, we must

reverse those awards and remand for further proceedings.  We also direct the trial court

to strike certain factual findings underlying the parenting plan. In all other respects, we affirm the final judgment of dissolution.

## Background

The parties had been married for thirteen years when the Wife filed her petition for dissolution in 2012. They had two children, one born in 2000 and the other in 2002. After significant pretrial proceedings, the court conducted a two-day bench trial in late 2017. At the bench trial, the Wife introduced numerous documents concerning the parties' finances, and both she and the Husband testified as to their marital and nonmarital assets and liabilities. In addition, the Wife called her forensic accountant to testify as to the value of certain financial accounts and assets. The court also accepted into evidence a report prepared by her accountant, in which he valued what he identified as marital assets and liabilities and in which he proposed an equitable distribution scheme that resulted in a large equalizing payment to the Wife.

After the bench trial, both parties submitted proposed findings of fact and proposed final judgments. The trial court ultimately entered a final judgment that adopted some, but not all, of the accountant's valuations. The court set forth an equitable distribution scheme, awarded the Wife permanent periodic alimony, awarded child support, and established a parenting plan. The Husband now appeals various aspects of this final judgment, contending that there are numerous errors in the various awards that should be corrected. We agree and therefore reverse and remand for further proceedings as explained below.

## Equitable Distribution

The Husband first contends that the equitable distribution scheme is not supported by the evidence presented at the bench trial and does not comply with the requirements of section 61.075(3), Florida Statutes (2017), because it does not identify and properly value all of the parties' marital and nonmarital assets and liabilities. And the record clearly shows that the Husband is correct.

> Section 61.075(3) provides, in pertinent part:
>
> In any contested dissolution action wherein a stipulation and agreement has not been entered and filed, any distribution of marital assets or marital liabilities shall be supported by factual findings in the judgment or order based on competent substantial evidence with reference to the factors enumerated in subsection (1). The distribution of all marital assets and marital liabilities, whether equal or unequal, shall include specific written findings of fact as to the following:
>
> (a) Clear identification of nonmarital assets and ownership interests;
>
> (b) Identification of marital assets, including the individual valuation of significant assets, and designation of which spouse shall be entitled to each asset;
>
> (c) Identification of the marital liabilities and designation of which spouse shall be responsible for each liability;
>
> (d) Any other findings necessary to advise the parties or the reviewing court of the trial court's rationale for the distribution of marital assets and allocation of liabilities.

A final judgment that fails to identify and value all of the parties' marital assets and liabilities and that fails to distribute them equitably between the parties must be reversed. See, e.g., Keurst v. Keurst, 202 So. 3d 123, 127 (Fla. 2d DCA 2016); Heiny v. Heiny, 113 So. 3d 897, 901-02 (Fla. 2d DCA 2013); Pignataro v. Rutledge, 841 So.

- 3 -

2d 636, 638 (Fla. 2d DCA 2003) (quoting Prest v. Tracy, 749 So. 2d 538, 538-39 (Fla. 2d DCA 2000)).

Here, the final judgment contains what purports to be a valuation of the parties' marital assets and liabilities in paragraph 23. It then purports to distribute those assets and liabilities in paragraphs 24 and 25. However, a review of those paragraphs shows that the court distributed assets in paragraphs 24 and 25 that are not actually identified in paragraph 23. For instance, paragraph 24 distributes a 2013 Ford Explorer to the Wife. That asset is not identified as a marital asset in paragraph 23, it is not valued anywhere in the final judgment, and the loan on that vehicle (to which both parties testified) is neither identified nor distributed. Similarly, paragraph 25 distributes a Ford F150 truck to the Husband that is neither identified nor valued in paragraph 23. Further, while paragraph 24 distributes half of the equity in the marital residence to the Wife, the other half of the equity is not distributed to anyone. Similarly, paragraph 24 distributes half of the Wife's bank account to her, but the other half is not distributed to anyone. Likewise, paragraph 24 generically distributes "jewelry" to the Wife without identifying or valuing any of it. Finally, nowhere does the judgment purport to identify any of the parties' nonmarital assets even though there was evidence presented at the hearing that at least a portion of the Husband's Thrift Savings Plan was accrued before the marriage. These errors, apparent on the face of the judgment, require reversal of the equitable distribution scheme.

In this appeal, the Wife contends that these errors were cured because the trial court attached her accountant's worksheet to the final judgment as an exhibit. However, that attachment simply created more problems because the final judgment

- 4 -

and the accountant's exhibit conflict in several ways. For example, the accountant's exhibit values the marital residence at $225,000 and sets the debt on it at $206,429—a figure supported by no evidence in the record—leaving the parties with $18,571 in equity. The final judgment, however, values the marital residence at $255,000 and the debt at $188,335, leaving the parties with $66,665 in equity. While the trial court purported to equally distribute the equity between the parties based on its own figures, it nevertheless adopted the accountant's equalizing payment, which was based on his different figures. Hence, despite nominally equitably distributing the equity in the marital residence, the trial court did not, in fact, do so.

Similarly, the final judgment values the parties' joint checking account at $35,206 as of the date of the hearing; however, the accountant valued it at $152,000 as of the date the petition was filed, and he divided it unequally based on what the parties had previously withdrawn. Again, the trial court appears to have rejected the accountant's valuation of the asset, but it nevertheless adopted the accountant's equalizing payment that was based on different figures.

Not only did these conflicts between the final judgment and the accountant's report result in the award of an improper equalizing payment, they create conflict on the face of the judgment. Therefore, on remand, the trial court must ensure that its valuations are supported by evidence in the record or otherwise reconcile its figures with those of the accountant. See Pinder v. Pinder, 750 So. 2d 651, 652 n.2 (Fla. 2d DCA 1999). Moreover, the trial court must identify all of the parties' marital and nonmarital assets and liabilities, value all of the marital assets and liabilities, distribute all of the marital assets and liabilities, and then calculate a proper equalizing payment.

- 5 -

In addition to the identification and valuation issue, the Husband also contends that the trial court abused its discretion in creating the equitable distribution scheme by using different valuation dates for different assets without any explanation. This argument is also correct.

Section 61.075(7) provides:

> The cut-off date for determining assets and liabilities to be identified or classified as marital assets and liabilities is the earliest of the date the parties enter into a valid separation agreement, such other date as may be expressly established by such agreement, or the date of the filing of a petition for dissolution of marriage. <u>The date for determining value of assets and the amount of liabilities identified or classified as marital is the date or dates as the judge determines is just and equitable under the circumstances. Different assets may be valued as of different dates, as, in the judge's discretion, the circumstances require.</u>

(Emphasis added.) This statute sets a bright line for determining what assets are marital and nonmarital—either the date of entering into a valid separation agreement or the date of filing a petition for dissolution of marriage. <u>See</u> <u>Byers v. Byers</u>, 910 So. 2d 336, 344 (Fla. 4th DCA 2005). However, the statute permits the trial court to thereafter <u>value</u> the individual marital assets as of different dates as long as the court's decision to do so is supported by findings that show it was equitable under the circumstances. <u>Id.</u> at 344-45 ("The discretion given to trial courts arises after the assets and liabilities are characterized as marital or non-marital."). Despite this discretion as to the date of valuation, however, this court has explained that "it is an abuse of discretion to use different valuation dates for similarly situated assets resulting in values favoring one party over the other without explanation or record evidence to justify the different

treatment." Struble v. Struble, 787 So. 2d 48, 50 (Fla. 2d DCA 2001) (citing Hicks v. Hicks, 580 So. 2d 876 (Fla. 2d DCA 1991)).

Here, the petition of dissolution was filed on July 17, 2012. Since the parties never entered into a valid separation agreement, the plain language of section 61.075(7) required the trial court to identify the parties' marital assets and liabilities as of that date. The court had no discretion to select a different date for identifying which of the parties' assets and liabilities were marital. However, once the court identified the marital assets, it had discretion to determine the date upon which to value those assets as long as the valuation date was justified and supported by findings that established that the date of valuation was equitable.

The problem here is that the trial court did not identify a valuation date for the parties' marital assets in the final judgment and that the Wife's accountant used a variety of valuation dates for the various assets. For example, the trial court valued the parties' "joint bank account" at $35,206; however, there was no evidence as to the date on which this value was determined. The Husband's Schwab investment account was valued as of September 2017—a date not used to value any other assets—and there was no explanation as to why that date was selected other than that it was what the accountant happened to use in preparing his report. Moreover, the trial court made no findings as to why the September 2017 date was proper and equitable, especially given the Husband's multiple postpetition contributions to this account. See, e.g., Willman v. Willman, 944 So. 2d 1151, 1151 (Fla. 1st DCA 2006) (noting that husband's pension plan continued as a marital asset only until the petition was filed); Moon v. Moon, 594 So. 2d 819, 822 (Fla. 1st DCA 1992) (noting that portions of a marital account acquired

- 7 -

after separation may be nonmarital).  The court's use of multiple valuation dates for different assets without explanation requires us to reverse the equitable distribution scheme for this reason as well.

This combination of errors in the equitable distribution scheme has rendered it anything but equitable.  It does not identify all of the parties' assets and liabilities as of the date of filing, it does not classify all of them as marital or nonmarital as of the filing date, and it does not value the marital assets and liabilities as of either a consistent date or inconsistent dates that are equitable under the circumstances.  These errors have resulted in the trial court's counting the Wife's postfiling income as her nonmarital property while counting the Husband's postfiling income as marital.  It has also resulted in the trial court distributing nonmarital assets as marital assets and "creating" marital assets that did not exist on the date of filing.  And, as the Husband points out, it may have resulted in double-counting of certain assets.  Therefore, we must reverse the equitable distribution scheme in toto.  On remand, the trial court must devise a proper equitable distribution scheme that complies with all of the requirements of section 61.075 and that is supported by proper factual findings based on record evidence.

**Alimony**

Next, the Husband contends that there are several errors relating to the alimony award that require it to be reversed and reconsidered on remand.  We agree.

First, the Husband contends that the trial court erred in calculating the alimony award by using the parties' gross incomes rather than their net incomes.  This contention is correct.

Section 61.08(2) requires that any award of alimony be based on one party's need for alimony and the other party's ability to pay. In determining both need and ability to pay, the trial court must consider only the parties' <u>net incomes</u>. See, e.g., Hanson v. Hanson, 217 So. 3d 1165, 1166 (Fla. 2d DCA 2017); Moore v. Moore, 157 So. 3d 435, 436 (Fla. 2d DCA 2015) ("An award of alimony must be based on the income that is available to the party, i.e., the party's net monthly income."); Badgley v. Sanchez, 165 So. 3d 742, 744 (Fla. 4th DCA 2015) ("The judgment is also deficient for failing to look to the parties' <u>net</u> incomes in assessing need and ability to pay."). An alimony award based on the parties' respective gross incomes must be reversed. See, e.g., Moore, 157 So. 3d at 437; Badgley, 165 So. 3d at 744-45.

Here, paragraph 30 of the final judgment plainly states that the Husband has an income of $10,819.38 per month while the Wife is earning $6894.52 per month. Notably, these are the parties' respective gross income figures from their financial affidavits, as the trial court itself recognized in paragraph 19 of the final judgment, where it identified certain mandatory deductions from the Husband's gross income of $10,819.38. Nevertheless, the trial court awarded the Wife $2000 per month in permanent periodic alimony without ever identifying or calculating either party's <u>net</u> income. Further, we note that the $2000 monthly alimony award is almost exactly the amount needed to simply equalize the parties' gross incomes. Hence, it is readily apparent from the face of the final judgment that the trial court erroneously failed to consider either party's <u>net</u> income rather than <u>gross</u> income when fashioning its alimony award. This error, standing alone, requires the alimony award to be reversed.

In addition, the Husband points to an error on the face of the judgment as it relates to alimony in that the judgment does not identify the time and manner for termination of alimony. The Wife concedes that this is an error that needs to be corrected. We also agree with the Husband that the language in the judgment should be clarified as to the trial court's intent regarding credit to the Husband for alimony payments made before the Income Deduction Order became effective.

In sum, we reverse the alimony award in toto and remand for further proceedings. On remand, the trial court must reconsider the alimony award using the parties' respective net incomes and taking additional evidence if necessary on the parties' current incomes. If the court again awards alimony, it must make factual findings concerning all of the factors identified in section 61.08(2) and these findings must be supported by the evidence actually presented to the court. Further, the court must identify the time and manner for termination of alimony and should clarify its intent as to the credits to which the Husband is entitled for payments made before the Income Deduction Order went into effect.

**Child Support**

Next, the Husband contends that the provisions of the final judgment concerning child support are facially erroneous because they do not include a provision for step-down of the child support amount in violation of section 61.13(1)(a)(1)(a). While the Wife agrees that the final judgment does not contain such a provision, she does not agree that reversal is required; instead, she contends that we should simply remand with instructions for the trial court to add such a provision. Nevertheless, reversal is

required in order for the trial court to include this statutorily mandated provision.  See Henderson v. Henderson, 162 So. 3d 203, 207-08 (Fla. 5th DCA 2015).

The Husband also contends that the trial court erred in awarding child support without calculating the amount of each parties' overnights with the children as provided by sections 61.30(1)(a) and (11)(b).  Further, he contends that the trial court erred by crediting him with an improper amount for the cost of medical and dental insurance for the children.  Both of these points appear from the record to have merit, and they are not contested by the Wife in her brief.  Therefore, the trial court should reconsider the child support award in light of the record evidence on remand.  Finally, as with the alimony award, the court must clarify its intent regarding credit to the Husband for child support payments made before the Income Deduction Order became effective.

**Parenting Plan**

Finally, the Husband contends that the final judgment contains factual findings that are not supported by the evidence and that may have played a role in the trial court's decision concerning the parenting plan.  The Husband is correct that the final judgment contains, in paragraph 26, factual findings that are not supported by any evidence admitted at the hearing or during the children's in camera testimony.  It is unclear where these findings came from given the utter lack of any testimony at all concerning the incident in question; however, given that the final judgment contains extensive factual findings concerning the Wife's breast cancer treatment that are also not based on evidence presented at the hearing, we suspect that the findings came

- 11 -

from the Wife's proposed final judgment.[1]  Notably, the Wife does not contend that the factual findings that allegedly support the parenting plan are supported by evidence presented at the hearing.  Therefore, on remand, these factual findings should be stricken.

The Husband seems to contend that the trial court must have impermissibly considered these factual findings in reaching its decision concerning the parenting plan, but he does not ask for the parenting plan itself to be reversed.  Further, given that the child at issue is no longer a minor, any such relief would be moot.  Accordingly, while the unsupported factual findings concerning the Husband's interaction with the parties' older child must be stricken from the final judgment, we need not reverse the parenting plan.

**Conclusion**

As this case demonstrates, trial courts must remember that while a party's expert may aspire to be above favoring their employer, they rarely succeed.  Trial courts must also remember that expert witnesses are rarely well-versed in the court's statutory obligations and so their reports may not provide information suitable for the trial court to adopt.  For both of these reasons, trial courts must ensure that they are examining all of

---

[1]The Husband did not argue in this appeal that the court's extensive factual findings concerning the Wife's breast cancer treatment are not supported by the evidence.  Nevertheless, our review of the record makes clear that while the Wife did testify as to some aspects of her breast cancer treatment, there are numerous other "facts" about the Wife's treatment that are included in the final judgment despite there being no testimony at the bench trial to support them.  Because the Husband did not raise this issue on appeal, we do not further address these unsupported factual findings.  Nevertheless, we caution the court on remand to ensure that any factual findings included in the final judgment are supported by evidence presented at the bench trial and any further proceedings it elects to hold.

the evidence presented by the parties rather than relying solely on that provided by one party's expert. For their part, attorneys have an obligation to introduce the evidence that the court needs to discharge its duties, and they should be cautious about expecting an expert to prove their case for them. Rarely, if ever, will it be appropriate for a trial court to simply adopt one party's expert report as its own.

In sum, we reverse the equitable distribution scheme, the alimony award, and the child support awards contained in the final judgment of dissolution and remand for further proceedings in accordance with this opinion. We also direct that the factual findings concerning the Husband's interactions with the parties' older child be stricken as they are not supported by any evidence. In all other respects, we affirm.

Affirmed in part, reversed in part, and remanded for further proceedings.

SLEET and SALARIO, JJ., Concur.