DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

RICHARD THOMAS MORGAN,

Appellant,

v.

MONICA SUE MORGAN,

Appellee.

No. 2D20-1622

_____

September 17, 2021

Appeal from the Circuit Court for Pinellas County; Christopher M. Labruzzo, Judge.

Paul S. Horning of Plotnick Law, P.A., St. Petersburg, for Appellant.

Mark F. Baseman of Felix, Felix & Baseman, LLC, Tampa, for Appellee.

KELLY, Judge.

Richard Thomas Morgan (the former husband) appeals from the final judgment dissolving his marriage to Monica Sue Morgan (the former wife). He challenges the trial court's equitable

distribution award, its alimony award, and its award of retroactive child support. We agree that the equitable distribution and alimony awards must be reversed. Because those awards must be revisited, we also reverse the award of retroactive child support for reconsideration, taking into account any changes in the alimony or equitable distribution awards.

## Equitable Distribution

"Generally stated, equitable distribution of marital assets is a three-step process: (1) identification of marital and nonmarital assets, (2) valuation of marital assets, and (3) distribution of marital assets as statutorily prescribed." *Keurst v. Keurst*, 202 So. 3d 123, 127 (Fla. 2d DCA 2016) (citing §§ 61.075(1), (3), Fla. Stat. (2013)). The former husband argues, correctly, that the trial court erred because it did not identify all the parties' assets and liabilities and classify them as either marital or nonmarital. *See id.* (holding that the failure to identify assets and liabilities as required by section 61.075(3) is reversible error).

The former husband also argues that the trial court erred in failing to apply the proper classification date to the assets and

liabilities it did identify. The final judgment bears this out, showing that the trial court was focused on the date it believed the parties effectively ended their marriage. Section 61.075(7), Florida Statutes (2017), requires that the date for determining which assets and liabilities can be classified as marital assets or liabilities is the earliest of the date the parties entered into a valid separation agreement or the date the petition for dissolution of marriage was filed. Because there was no separation agreement in this case, the parties' assets and liabilities had to be identified as of the date the former wife filed her petition. *See Tritschler v. Tritschler*, 273 So. 3d 1161, 1165 (Fla. 2d DCA 2019).

After the assets and liabilities are identified, the trial court must then place a value on each. The date used in determining the value of the assets and the amount of the liabilities is left to the discretion of the court. *See* § 61.075(7) ("The date for determining value of assets and the amount of liabilities identified or classified as marital is the date or dates as the judge determines is just and equitable under the circumstances."). This discretion arises only after the assets and liabilities are characterized as marital or nonmarital. *See Rao-Nagineni v. Rao*, 895 So. 2d 1160, 1161 (Fla.

4th DCA 2005). The trial court's error here is like the error described in *Rao-Nagineni* in that throughout the final judgment the court referenced the date the parties began living separately and used that date to determine assets and liabilities and their values. *See id.* at 1160-61. On remand, once the trial court has identified *all* the marital assets and liabilities in existence when the petition for dissolution was filed, it may then proceed to value them as of the date or dates the court deems equitable. *See* § 61.075(7) ("Different assets may be valued as of different dates, as, in the judge's discretion, the circumstances require."). The trial court's equitable distribution scheme must comply with all the requirements of section 61.075 and be supported by proper findings establishing that the date of valuation is equitable. *See Tritschler*, 273 So. 3d at 1164-65.

## Alimony

During the marriage the parties lived comfortably in large homes, travelled frequently, and never worried about being able to pay their bills. After the parties separated, the former husband lived in a small apartment, drove a truck with over 200,000 miles

4

on it, and could barely make ends meet. The court found that "[t]he evidence establishes that the parties lived an upper-middle class lifestyle during the course of the marriage. The Husband's current lifestyle is not commensurate with the marital lifestyle." The trial court determined that the former wife's current monthly net income was approximately $18,045 and compared it to the former husband's monthly salary of $4,333.33. The court found that the former wife had the ability to pay, and the former husband had the need for alimony. Despite these findings, the trial court awarded the former husband $1,000 per month in permanent periodic alimony.

Given the standard of living established during the marriage and the disparity between the parties' incomes, the trial court abused its discretion in awarding the former husband a nominal amount of alimony. *See Juchnowicz v. Juchnowicz,* 157 So. 3d 497, 500 (Fla. 2d DCA 2015) (holding that the trial court erred when it determined the wife's need for permanent alimony based on her postseparation lifestyle, rather than the standard of living enjoyed during the marriage); *Griffin v. Griffin,* 906 So. 2d 386, 388 (Fla. 2d DCA 2005) (noting that permanent alimony is intended to allow a

5

spouse "to maintain the standard of living established by the parties during the marriage and to ensure that . . . one spouse is not 'shortchanged' "); *Donoff v. Donoff*, 940 So. 2d 1221, 1225 (Fla. 4th DCA 2006) (noting that the purpose of permanent periodic alimony is "to avoid—where possible—having a recipient pass from the ease and comfort of always having more than enough, to the distress of having only just enough for the essentials of minimum food, shelter and clothing").  The trial court's alimony award is not commensurate with the parties' marital standard of living and creates a gross disparity.

## Retroactive Child Support

The former husband challenges the amount of retroactive child support awarded to the former wife.  He argues the trial court abused its discretion in determining his support obligation from the date of separation rather than from the date the former wife filed her petition.  He contends that his move to Florida was not a termination of the marital partnership but was intended to benefit the child by qualifying for in-state tuition.

Section 61.30(17) provides that "[i]n an initial determination of child support . . . the court has discretion to award child support retroactive to the date when the parents did not reside together in the same household with the child, not to exceed a period of 24 months preceding the filing of the petition." Because the former husband did not reside in the same household with the parties' minor daughter for the two years before the petition was filed, the trial court had the discretion to award retroactive child support for the twenty-four months prior to the date of filing. However, because the trial court's equitable distribution plan and alimony award must be revisited, the court must also reconsider the amount of retroactive child support in accordance with the child support guidelines.

## Conclusion

Accordingly, we affirm the dissolution of the parties' marriage but reverse and remand so that the trial court can clearly identify assets and liabilities that were in existence on the date of the filing of the petition and then determine the value of each on the date the court deems appropriate. The trial court must also reconsider the

7

alimony award to the former husband and the amount of retroactive child support based on any amendments to the alimony award and the equitable distribution scheme.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

BLACK and ROTHSTEIN-YOUAKIM, JJ., Concur.

_____

Opinion subject to revision prior to official publication.