DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ROBIN FIALA,**
Appellant,

v.

**JOEL FIALA,**
Appellee.

No. 4D21-1185

[January 12, 2022]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Dale C. Cohen, Judge; L.T. Case No. FMCE18-014683.

Terrence P. O'Connor of Morgan, Carratt & O'Connor, P.A., Fort Lauderdale, for appellant.

Sandra Bonfiglio of Sandra Bonfiglio, P.A., Fort Lauderdale, for appellee.

GERBER, J.

The wife appeals from the circuit court's second amended final judgment of dissolution of marriage without minor children. The wife argues the circuit court erred in two respects: (1) by identifying the marital assets and liabilities as of the parties' 2008 separation date – instead of the dissolution petition's 2018 filing date – contrary to section 61.075(7), Florida Statutes (2020); and (2) by denying the wife's alimony claim, primarily because the court used the legally-incorrect separation date to identify the marriage length and marital standard of living.

The husband concedes the circuit court erred in using the parties' separation date as the basis for its rulings. However, the husband argues the errors were harmless because the trial court's reasoning for its equitable distribution determination and denial of alimony applied equally to the 2018 petition filing date.

We agree with the husband's harmless error argument. Thus, we affirm the circuit court's ultimate dispositions, but remand for the circuit court to enter an amended final judgment consistent with this opinion.

## ***Procedural History***

The parties married in 1996, and separated in 2008, without entering into a formal separation agreement.  During their separation, the parties lived with other people in long-term relationships.

Over ten years later, in 2018, the husband filed a petition for marriage dissolution without minor children.  The wife filed an answer and counterpetition requesting "temporary, rehabilitative, permanent, durational and lump sum alimony."

The circuit court ultimately held a trial on the issues of equitable distribution, alimony, and attorney's fees.

At the trial's start, in lieu of presenting tax returns, the parties stipulated to their respective incomes for years 2010 through 2019.  The parties also stipulated that the wife, in addition to having received income for years 2010 through 2019, also had received the husband's voluntary support payments.

After the parties presented their evidence, the trial court announced its findings:

> [T]he parties … married in … 1996.  It's unquestioned that they separated in August … [2008] and *I'm going to find that the effective date of termination of the marriage* ….  This is a highly unusual ruling, but it's a highly unusual case and … the facts of this case do justify that ruling.  This is the first time in my career in 14 years as a judge that I am not finding … the date of the petition as the date of the end of the marriage.
>
> As I am finding that August … 2008 is the effective end date of the marriage, *I'm going to look at that date for purposes of equitable distribution.*  …
>
> The … [c]ourt is finding August … 2008 as the effective end date of the marriage [because] on that date … the [w]ife moved to Florida, the [h]usband stayed where he was.  The [h]usband was in a significant relationship immediately after separation and … the [w]ife was in a strong relationship soon thereafter and … has been with the same boyfriend for the past 11 years. …

....

The [h]usband from 2008 until early ... [2020] still fully supported the [w]ife and gave her substantial amounts of money even though ... she was working full time. The [w]ife was accepting that money. That money was given to her tax free and yet the [w]ife never used that money to pay rent, the [w]ife never used that money to pay a mortgage [in the marital home in which she resided until 2015], and ... the [w]ife lived rent free with her boyfriend from 2015 to 2020.

So for approximately 12 [years] after the split the [h]usband supported his wife and for five of those years the boyfriend supported the [w]ife. So the [c]ourt is ordering basically that the marriage was less than 12 years, [the wife] received about 12 years['] worth of support and the alimony is terminated. The [c]ourt is ordering zero alimony.

....

When we compare that to the [w]ife's situation today, we know according to her financial affidavit of June ... 2020 she has $140,000.00 worth of assets and only $7,600.00 worth of debts. The [h]usband's financial affidavit shows a negative $55,000.00 net worth. And these are again part of the factors why this [c]ourt is ordering no alimony for the [w]ife.

....

*The duration of the marriage is 12 years, which is a moderate [term] marriage.*

....

We have a husband who actually stepped up and did the right thing and for 12 years sent the [w]ife more money than she needed. The [c]ourt's relying on that in its ruling. So alimony is going to be set at zero. *The 401k for the [h]usband with an approximate value of [$]20,000 back in August ... 2008 will be split based on the length of the marriage at the time that he was acquiring and contributing to that asset and that will be split.*

3

As part of its oral ruling, the circuit court, as required by section 61.08, Florida Statutes (2020), addressed all of the factors which applied to the parties. The circuit court later entered a final judgment of dissolution consistent with its oral ruling.

The wife timely filed a motion for rehearing. The wife argued, among other things, that the circuit court had erred as a matter of law in determining the marriage's "effective termination date" was August 2008, which the circuit court then erroneously used for identifying and valuing the marital assets and denying alimony to the wife:

> [Section] 61.08(4), [Florida Statutes] ... specifically defines the ["]length of [a] marriage["] [as] ... ["]the period of time from the date of marriage **until the date of filing of an action for dissolution of marriage**." (*emphasis added*)[.]
>
> There is no statutory authority for the [c]ourt to alter, modify or reduce the statutory length of the parties' marriage for any reason. The [c]ourt cannot unilaterally create "an effective termination date." Equitable arguments cannot modify the unambiguous terms of a clear statute.
>
> The parties ... married November 29, 1996. This dissolution action was filed November 27, 2018. The legal and statutory length of marriage is 22 years.
>
> The [c]ourt erred in arbitrarily ruling that the length of the marriage is 12 years.
>
> The [c]ourt's arbitrary and erroneous decision to shorten the parties' marriage created additional errors. This is a long-term marriage and Wife is presumptively entitled to ... permanent periodic alimony. The [c]ourt's [j]udgment does not address the statutory presumption.
>
> ....
>
> F.S. § 61.08(7) states:
>
>> "The cut-off date for determining assets and liabilities to be identified or classified as marital assets and liabilities is the earliest of the date the parties enter into a valid separation agreement, such other date as may be expressly established

4

by such agreement, **or the date of the filing of a Petition for Dissolution of Marriage**." (*emphasis added*)[.]

The parties did not execute a valid separation agreement, and the [c]ourt was statutorily required to use the date of filing (November 27, 2018) to identify the marital assets and liabilities.

The [c]ourt erroneously used 2008 as the date to identify and value the marital assets and liabilities.

Since the [c]ourt did not utilize the proper date (November 27, 2018) to identify the marital assets and liabilities, the [c]ourt's equitable distribution findings based on the assets which existed in 2008 are inappropriate and erroneous.

The [c]ourt's [j]udgment is silent as to the assets and liabilities which existed on November 27, 2018, the date of filing.

....

This was a long-term marriage of 22 years. ...

The [c]ourt's award of zero alimony was error.

(internal citation and paragraph enumeration omitted).

The wife's motion for rehearing also argued the final judgment contained no findings on the wife's request for attorneys' fees and costs.

The circuit court ultimately entered a second amended final judgment which merely corrected minor clerical mistakes in the original final judgment, but did not grant any of the relief which the wife sought in her motion for rehearing. In sum, the second amended final judgment: (1) dissolved the parties' marriage; (2) equitably distributed the marital portion of the husband's 401k, "using the valuation date of August 2008 of approximately $20,000"; (3) "order[ed] zero alimony, as the [w]ife has no need for the alimony"; and (4) "in an abundance of caution, ... analyzed the statutory factors relating to alimony in accordance with Florida Statute 61[.]"

This appeal followed.

5

### *The Parties' Arguments on Appeal*

The wife summarizes her arguments on appeal as follows:

> The [circuit] [c]ourt erred as a matter of law in identifying the marital assets and liabilities as of August 2008, [ten] years prior to the date the dissolution ... action was filed. The parties did not enter into a valid separation agreement to identify the marital assets and liabilities on any date prior to the divorce filing date. There is a bright-line rule which mandated the [circuit] [c]ourt identify the assets and liabilities on the date of filing, which was November 27, 2018. ...

> The use of the legally-incorrect identification date triggered an avalanche of other legal errors. By using the wrong identification date, the [circuit] [c]ourt violated the clear dictates of [section] 61.075, which required the [circuit] [c]ourt to identify marital assets and liabilities on the date of filing, November 27, 2018.

The wife also argues the circuit court reversibly erred in denying her alimony claim, primarily because the court used the legally-incorrect separation date to identify the marriage length and marital standard of living.

In response, the husband concedes: "Since the parties did not have a valid separation agreement, ... pursuant to [section] 61.075(7), the [circuit] court should have identified the marital assets and liabilities as of the ... [petition for dissolution] filing [date] [— November 27, 2018 —] (as opposed to the ... [2008] separation [date])." However, the husband argues the circuit court's error was harmless because the trial court's reasoning for its equitable distribution determination and denial of alimony applied equally to the 2018 petition filing date.

In reply, the wife argues the circuit court's error, as a matter of law, cannot be deemed as harmless.

### *Our Review*

"[T]he standard for reviewing a trial court's equitable distribution is generally abuse of discretion." *Mathers v. Brown*, 21 So. 3d 834, 837 (Fla. 4th DCA 2009) (citation omitted). Similarly, a trial court has considerable discretion in determining an award of alimony, and that determination is

reviewed for an abuse of discretion. *See, e.g., Marshall v. Marshall*, 953 So. 2d 23, 25-26 (Fla. 5th DCA 2007) (citing *Canakaris v. Canakaris*, 382 So. 2d 1197 (Fla. 1980)).

However, regarding both equitable distribution and alimony, a trial court's determination is reviewed de novo when the issue on appeal concerns a pure issue of law. *Mathers*, 21 So. 3d at 837; *Beal v. Beal*, 146 So. 3d 153, 154 (Fla. 5th DCA 2014).

"Generally stated, equitable distribution of marital assets is a three-step process: (1) identification of marital and nonmarital assets, (2) valuation of marital assets, and (3) distribution of marital assets as statutorily prescribed." *Morgan v. Morgan*, 46 Fla. L. Weekly D2076, 2021 WL 4233761, at *1 (Fla. 2d DCA Sept. 17, 2021) (citation omitted); *see also* §§ 61.075(1), (3), Fla. Stat. (2020).

Further, section 61.075(7), Florida Statutes (2020), provides:

> The cut-off date for determining assets and liabilities to be identified or classified as marital assets and liabilities is the earliest of the date the parties enter into a valid separation agreement, such other date as may be expressly established by such agreement, or the date of the filing of a petition for dissolution of marriage. The date for determining value of assets and the amount of liabilities identified or classified as marital is the date or dates as the judge determines is just and equitable under the circumstances. Different assets may be valued as of different dates, as, in the judge's discretion, the circumstances require.

§ 61.075(7), Fla. Stat. (2020). "This section provides a bright line rule for setting the date to be used for classifying marital assets and liabilities for the purpose of equitable distribution." *Schmitz v. Schmitz*, 950 So. 2d 462, 463 (Fla. 4th DCA 2007) (citations omitted).

The second district's recent *Morgan* decision is instructive. *Morgan* states:

> The former husband argues, correctly, that the trial court erred because it did not identify all the parties' assets and liabilities and classify them as either marital or nonmarital. *See* [*Keurst v. Keurst*, 202 So. 3d 123, 127 (Fla. 2d DCA 2016)] (holding that the failure to identify assets and liabilities as required by section 61.075(3) is reversible error).

7

The former husband also argues that the trial court erred in failing to apply the proper classification date to the assets and liabilities it did identify. The final judgment bears this out, showing that the trial court was focused on the date it believed the parties effectively ended their marriage. Section 61.075(7), Florida Statutes ... requires that the date for determining which assets and liabilities can be classified as marital assets or liabilities is the earliest of the date the parties entered into a valid separation agreement or the date the petition for dissolution of marriage was filed. Because there was no separation agreement in this case, the parties' assets and liabilities had to be identified as of the date the former wife filed her petition. *See Tritschler v. Tritschler*, 273 So. 3d 1161, 1165 (Fla. 2d DCA 2019).

After the assets and liabilities are identified, the trial court must then place a value on each. The date used in determining the value of the assets and the amount of the liabilities is left to the discretion of the court. *See* § 61.075(7) ("The date for determining value of assets and the amount of liabilities identified or classified as marital is the date or dates as the judge determines is just and equitable under the circumstances."). This discretion arises only after the assets and liabilities are characterized as marital or nonmarital. *See Rao-Nagineni v. Rao,* 895 So. 2d 1160, 1161 (Fla. 4th DCA 2005). The trial court's error here is like the error described in *Rao-Nagineni* in that throughout the final judgment the court referenced the date the parties began living separately and used that date to determine assets and liabilities and their values. *See id.* at 1160-61. On remand, once the trial court has identified *all* the marital assets and liabilities in existence when the petition for dissolution was filed, it may then proceed to value them as of the date or dates the court deems equitable. *See* § 61.075(7) ("Different assets may be valued as of different dates, as, in the judge's discretion, the circumstances require."). The trial court's equitable distribution scheme must comply with all the requirements of section 61.075 and be supported by proper findings establishing that the date of valuation is equitable. *See Tritschler*, 273 So. 3d at 1164-65.

*Morgan*, 2021 WL 4233761, at *1.

Here, like in *Morgan*, because the parties had no separation agreement, the circuit court was required to identify and value the parties' assets and liabilities, and the length of the parties' marriage, as of when the husband filed the dissolution petition in 2018, not when the parties separated in 2008. The circuit court's failure to fulfill this requirement was error.

We thus must apply a harmless error analysis. *See Vaughn v. Vaughn*, 714 So. 2d 632, 634 (Fla. 1st DCA 1998) ("A harmless error analysis has previously been applied to deficiencies in a trial court's order regarding equitable distribution.") (citations omitted); *Jericka v. Jericka*, 198 So. 3d 661, 663 (Fla. 2d DCA 2015) ("[A] harmless error review is required in alimony cases.").

As the husband argues, the circuit court's error was harmless for the following reasons:

> Here, there was only evidence of one significant asset as of the date of the parties' separation in August 2008 that was still in existence as of the filing and/or trial, which was the Husband's 401k. ... [P]er the Husband's uncontroverted testimony, the value of his 401k was roughly $15,000 to $20,000 as of the parties' separation and approximately $21,000 to $22,000 as of the trial date. ...

> Aside from the split of the 401k, each party walked away from the marriage with all of [his/her] post-separation assets and liabilities, whether marital or non-marital. The Husband's Financial Affidavit dated June 5, 2020, showed that he had assets of $75,358 and liabilities totaling $105,525. After removing the 401k (since it was already equitably distributed), the Husband was left with a deficit of $49,025. ...

> As for the Wife, her Financial Affidavit dated June 5, 2020, shows she has assets of $139,955 and a single 'liability' of $7,600, leaving her with a net worth of $132,355. ... In short, the Wife left the parties' marriage with a substantially higher net worth than the Husband.

Based on the foregoing, the circuit court's legal error in identifying the marital assets and liabilities as of the parties' separation date, instead of the dissolution's filing date, was harmless as it relates to the circuit court's equitable distribution ruling.

9

The same harmless error analysis applies to the circuit court's denial of the wife's alimony request. Because the marriage had "a duration of 17 years or greater," it was a long-term marriage. *See* § 61.08(4), Fla. Stat. (2020) ("The length of a marriage is the period of time from the date of marriage until the date of filing of an action for dissolution of marriage."). Thus, the circuit court erred in concluding the parties' marriage was a moderate-term marriage. *See id.* ("a moderate-term marriage is a marriage having a duration of greater than 7 years but less than 17 years").

Because the circuit court incorrectly determined that the parties' twenty-two-year marriage qualified as a moderate-term marriage, the court failed to recognize "there is a rebuttable presumption in favor of permanent alimony after a long-term marriage." *Harkness v. Harkness*, 300 So. 3d 668, 671 (Fla. 4th DCA 2020).

Nevertheless, the circuit court's error was harmless. "An award of permanent alimony is improper where the evidence does not reflect permanent inability on the part of the [requesting spouse] to become self-sustaining." *Rosecan v. Springer*, 845 So. 2d 927, 929-30 (Fla. 4th DCA 2003) (citation and alteration omitted). "Where evidence shows that [the requesting] spouse was in good health and had job skills, as here, the fact that the other spouse's income substantially exceeds the other's either now or previously ... does not justify an award of permanent alimony." *Pricher v. Pricher*, 300 So. 3d 1258, 1261 (Fla. 5th DCA 2020) (citation omitted).

Further, as the Fifth District has held:

> [I]t [is] not error for the trial court to consider the ... [requesting spouse's] ... supportive relationship because section 61.08(2)(j), Florida Statutes ... permits the trial court to consider "[a]ny other factor necessary to do equity and justice between the parties" when determining a proper award of alimony, and that consideration is dependent upon the circumstances of each particular case.

*Bruce v. Bruce*, 243 So. 3d 461, 463 (Fla. 5th DCA 2018) (citation omitted).

Here, although the marriage legally was a long-term marriage, the evidence did not support a finding that the wife had a need, and the husband had the ability to pay, permanent alimony. *See Zarycki-Weig v. Weig*, 25 So. 3d 573, 576 (Fla. 4th DCA 2009) ("The two primary considerations in determining permanent periodic alimony are need and ability to pay.") (citation omitted). As the husband argues:

> [The wife's] financial affidavit: (1) fails [to] account for the in-kind value of [the wife's] living rent-free with her boyfriend, the value of which she testified was $2,000 per month; (2) includes an $800 monthly rent expense that the [w]ife and her boyfriend admitted under oath was not being paid at that time[;] (3) includes $900 in monthly children's expenses for emancipated children; (4) lists $884 in monthly creditors despite the [w]ife's testimony that same had been paid off[;] (5) includes a [$414] car payment ... which the [w]ife testified had been paid off[;] [and] (6) includes a savings component in the form of a health savings account in the amount of $282 per month ....

Thus, as the husband submits, "the [w]ife's financial affidavit did not provide substantial, competent evidence of her needs and it would have been improper to use the financial affidavit at face value. ... [Rather,] ... the competent, substantial evidence supported the court's finding that the [w]ife did not have a need for alimony." *Cf. Addie v. Coale*, 120 So. 3d 44, 46 (Fla. 4th DCA 2013) (wife's financial affidavit was not competent substantial evidence upon which court could rely upon to calculate child support, when wife admitted at trial that the affidavit understated her true income).

## *Conclusion*

Based on the foregoing, we affirm the circuit court's equitable distribution determination, and the circuit court's denial of the wife's alimony request, under the harmless error doctrine. We remand for the circuit court to enter an amended final judgment identifying the marital assets as the date of the filing of a petition for dissolution of marriage, and classifying the twenty-two-year marriage as long-term. On all other arguments which the wife has made in this appeal regarding the circuit court's equitable distribution and alimony rulings, we affirm without further discussion.

*Affirmed.*

WARNER and LEVINE, JJ., concur.

\* \* \*

**Not final until disposition of timely filed motion for rehearing.**