# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2023-3130
LT Case No. 2022-DR-149

_____

SEAN P. MCHUGH,

    Appellant,

    v.

MELTEM MCHUGH,

    Appellee.

_____

On appeal from the Circuit Court for St. Johns County.
Howard O. McGillin, Jr., Judge.

Michael L. Duncan, of Duncan Trial & Mediation, Jacksonville,
for Appellant.

No Appearance for Appellee.

December 6, 2024

EDWARDS, C.J.

    Appellant Sean McHugh ("Former Husband"), appeals the
final judgment of dissolution of marriage, the revised judgment of
dissolution of marriage, and the order regarding his motion for
rehearing. Former Husband raises three issues on appeal,
asserting that the trial court erred in: 1) designating Former Wife's
bank account as a nonmarital asset; 2) the valuation of Former
Wife's vehicle; and 3) designating the funds received from Former

Husband's father as a gift rather than a loan. This Court has jurisdiction. *See* Fla. R. App. P. 9.030(b)(1)(A). For the following reasons, we reverse as to all three issues and remand for reconsideration and recalculation of the equitable distribution of the parties' marital assets and liabilities.

## Background Facts

Appellant and Appellee, Meltem McHugh ("Former Wife"), married on June 12, 2015, and lived in Virginia. When Former Wife completed her education, she announced that she had taken a job as a nurse in Jacksonville, Florida. Her decision led to arguments and the parties separated on May 17, 2021. The parties did not enter into any marital settlement agreement. She filed her petition for dissolution on January 27, 2022, and he answered. No children were born of the marriage and neither party sought support from the other. Both sought equitable distribution of their marital assets and liabilities. During the period between their separation and the filing of Former Wife's petition, Former Husband provided some financial assistance to Former Wife and her daughter, and he would occasionally have overnight stays with them in Florida.

## Classifying Former Wife's Bank Account As Nonmarital

The first issue raised on appeal is whether the trial court erred in designating Former Wife's Bank of America account, which had a balance of $10,830, as a nonmarital asset. A trial court's characterization of an asset as marital or nonmarital is reviewed de novo and any factual findings necessary to make this legal conclusion are reviewed for competent, substantial evidence. *Tradler v. Tradler*, 100 So. 3d 735, 738 (Fla. 2d DCA 2012).

Section 61.075(8), Florida Statutes (2022), outlines what constitutes a marital or a nonmarital asset.

> All assets acquired and liabilities incurred by either spouse subsequent to the date of the marriage and not specifically established as nonmarital assets or liabilities are presumed to be marital assets and liabilities. Such presumption is overcome by a

2

showing that the assets and liabilities are nonmarital assets and liabilities.

§ 61.075(8), Fla. Stat.

Moreover, section 61.075(7), Florida Statutes (2022), provides a clear rule for determining the date to be used in classifying marital assets and liabilities for equitable distribution:

> The cut-off date for determining assets and liabilities to be identified or classified as marital assets and liabilities is the earliest of the date the parties enter into a valid separation agreement, such other date as may be expressly established by such agreement, or the date of the filing of a petition for dissolution of marriage.

§ 61.075(7), Fla. Stat.

The undisputed evidence below showed that the funds in the Bank of America account were obtained after the parties separated but before the petition for dissolution was filed. As there was no separation agreement in this case, under section 61.075(7), the cut-off date for asset classification is the date on which the petition for dissolution of marriage was filed. *See Willman v. Willman*, 944 So. 2d 1151 (Fla. 1st DCA 2006); *Rao-Nagineni v. Rao*, 895 So. 2d 1160, 1161 (Fla. 4th DCA 2005). The trial court is required to use that date for classification of assets as marital or nonmarital. *Tritschler v. Tritschler*, 273 So. 3d 1161, 1165 (Fla. 2d DCA 2019). "The court had no discretion to select a different date for identifying which of the parties' assets and liabilities were marital." *Id*.

The trial court concluded that the funds were nonmarital on the basis of equity and to avoid fundamental unfairness. This was error as the trial court chose a date of asset classification not provided for in section 61.075(7), Florida Statutes.

Moreover, there is no evidence in the record that Former Wife's bank account was nonmarital. *Grieco v. Grieco*, 917 So. 2d 1052, 1054 (Fla. 2d DCA 2006) ("Although the Wife's name was on the account, title, alone, does not determine whether the funds are

marital assets." (internal citation omitted)). Where an asset is acquired during the marriage, as was the case here with the money in her account, section 61.075(8), Florida Statutes, states that it is presumed to be a marital asset.

There was no testimony to rebut that statutory presumption and the trial court erred in shifting the burden of proof to Former Husband by noting that he had not presented any evidence to support that it should be classified as a marital asset. Accordingly, we hold that Former Wife's Bank of America account is a marital asset subject to equitable distribution and reverse the trial court's improper classification of it as a nonmarital asset.

### Valuation of Former Wife's Automobile

The second issue on appeal concerns the trial court's valuation of Former Wife's car for purposes of equitable distribution. The only evidence presented regarding the car's value came from Former Husband's testimony that he had consulted the relevant Kelley Blue Book, input appropriate vehicle mileage and use data, and received a corresponding value of $6,000. In the original judgment, the trial court found Former Wife's car had a value of $6,000, noting Former Husband's just described testimony. However, the court's worksheets listed a value of $4,000 for that same car. Former Husband raised this discrepancy in his motion for rehearing.

In the revised final judgment, the trial court set forth a finding that Former Wife's car is a marital asset with a value of $4,000 and went on to state that "Respondent testified that was the value derived from Kelley Blue Book." The trial court added a footnote to this valuation stating that it had made a scrivener's error when it originally reported the value as being $6,000.

The only competent substantial evidence in the record as to the value of Former Wife's car, which the trial court obviously accepted, is Former Husband's testimony about a Kelley Blue Book value of $6,000. Accordingly, we reverse and remand for the trial court to correct the value of Former Wife's car to $6,000 for purposes of equitable distribution.

### Classification of Parental Loan as a Gift

4

Former Husband testified at trial that during the marriage there were financial difficulties in covering all the parties' expenses, so he borrowed money from his father from time to time. The outstanding balance of the series of loans was $20,780 at the time Former Wife filed her petition. Despite the testimony of Former Husband and his father that it was a loan, the trial court determined that it should be classified as a "gift loan" such that it was not a marital liability to be equitably distributed.[1] Former Husband correctly argues that the trial court erred in reaching that conclusion.

Former Husband testified that the money provided by his father to him was used for the parties' family expenses and that he was obligated to repay his father. He admitted there were no formal loan documents, no interest was being charged, and there was no set repayment schedule. Former Husband testified that he made payments on the outstanding loan when money was available. Former Husband's father testified that he considered it a loan and expected to be repaid even though there were no loan documents or formal payment schedule. The father testified that he lent the money to Former Husband "to alleviate his financial difficulties, and I expect payment when his financial troubles are over." Father agreed that he had also made separate monetary gifts to Former Husband, and those gifts were not considered loans.

Former Husband introduced records contemporaneously made by his father which showed on a monthly basis each loan made to Former Husband with each being designated in the father's Microsoft Money electronic accounting as "Loan to Sean." In the same Microsoft Money accounting, the father listed on a monthly basis fourteen different transactions as "Loan Payment Sean McHugh," which was consistent with Former Husband's testimony regarding occasional loan payments that he had made.

As the trial court concluded that the money was a gift rather than a loan, we will discuss the legal distinctions between gifts and loans. Generally, a gift is presumed where the following three

[1] Regardless of the creative "gift loan" label, the trial court treated the $20,780 as a gift, rather than a loan.

5

elements are satisfied: donative intent, delivery of possession, and surrender of dominion and control. *Eulette v. Merrill Lynch, Pierce, Fenner & Beane*, 101 So. 2d 603 (Fla. 3d DCA 1958). As the money was delivered to and accepted by Former Husband, the intent behind the transfer of money is determinative in distinguishing between a loan and a gift. *See Reiner v. Reiner*, 400 So. 2d 1292 (Fla. 4th DCA 1981).

In *Bratsch v. Bratsch*, 373 So. 3d 390 (Fla. 5th DCA 2023), this Court reversed the trial court's finding that the money that the former wife received from her parents was a gift and not a loan. *Id.* at 391. At trial, there was record evidence that the former wife agreed to pay back the borrowed funds, payments had been made, and further, no evidence was offered by the former husband to contradict that the funds were a loan. *Id.* As in our case, in *Bratsch*, there were no written loan documents or written agreements to repay the money. In both *Bratsch* and our case, the lending parent and borrowing child/spouse testified that the transactions were loans, not gifts. *Id.* at 390. As in *Bratsch*, the opposing spouse, here Former Wife, offered no contradictory evidence. *Id.*

Accordingly, the trial court's finding that the money provided by Former Husband's father was a gift is not supported by competent substantial evidence and is therefore reversed. On remand, the trial court shall treat the outstanding balance of that loan as a marital liability which is to be equitably distributed.

### Conclusion

For the reasons explained above, we reverse and remand. Given this Court's reversal as to those three financial findings, the trial court on remand must reconsider and recalculate the equitable distribution of the parties' marital assets and liabilities in accordance with this opinion and governing law.

REVERSED and REMANDED with instructions.

EISNAUGLE and SOUD, JJ., concur.

6

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____